IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| S.F., by and through his parents and guardians, J.F. and R.F., J.F., and R.F., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:12CV560 |
| CABARRUS COUNTY BOARD OF EDUCATION and AMANDA KENTFIELD, | ) ) ) ) | |
| Defendants. | ) ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

BEATY, District Judge.

Before the Court is a Motion to Dismiss [Doc. #14], a Motion to Dismiss the Amended Complaint [Doc. #19], and a Motion to Strike [Doc. #28] filed by Defendant Cabarrus County Board of Education ("Defendant Board" or "the Board"). Also before the Court is a Motion to Dismiss the Amended Complaint [Doc. #30] filed by Defendant Amanda Kentfield ("Defendant Kentfield"). Before the Court is also a Motion for Appointment of Guardian Ad Litem [Doc. #32] filed by Plaintiff S.F., by and through his parents and guardians, J.F. and R.F., and by Plaintiffs J.F. and R.F., individually (collectively "Plaintiffs").

I.      FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 2012, Plaintiffs filed this action against Defendant Board for alleged deprivations of S.F.'s right to Free Appropriate Public Education ("FAPE") and for attorneys' fees and costs arising from two administrative proceedings pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. S.F. is a minor child with autism.

(Compl. ¶ 1). As such, S.F. is properly considered a "child with a disability" under the IDEA. See 20 U.S.C. § 1401(3)(A)(i). S.F. resides with his parents, J.F. and R.F., in Harrisburg, North Carolina, and attends school in the territorial jurisdiction of Defendant Board. (Compl. ¶ 2). The impetus for the underlying action arises out of the final administrative adjudication of two petitions for due process under the IDEA. (Compl. ¶ 7). The first administrative proceeding ("S.F. I") was initiated by the Board against J.F. and R.F., the parents of S.F. (Compl. ¶ 7). The second administrative proceeding ("S.F. II") was initiated by S.F. and his parents, J.F. and R.F., against the Board. (Compl. ¶ 7).

With regard to the first administrative proceeding, S.F. I, Plaintiffs allege that the Board initiated proceedings before the North Carolina Office of Administrative Hearings ("OAH") against S.F.'s parents "on the grounds that S.F.'s parents had requested additional educational evaluations that were required by IDEA and advised the Board of their intent to obtain an independent educational evaluation ("IEE")." (Compl. ¶ 8). Plaintiffs further allege that the Board "failed to conduct additional evaluations necessary to identify S.F.'s educational needs," "refused to act on S.F.'s parents' request for an IEE," and "refused to fund an IEE." (Compl. ¶ 8). However, on November 24, 2010, before a hearing on the matter, "the Board voluntarily dismissed its Petition without prejudice, asserting that the Board would reimburse Plaintiffs the cost of the IEE they obtained." (Compl. ¶ 10) (emphasis in original). After this dismissal without prejudice, the proceeding remained open until November 24, 2011, upon which "the Board was foreclosed from refiling its Petition by operation of [North Carolina Rule of Civil Procedure] 41(a)." (Compl. ¶ 11). Based on this voluntary dismissal, Plaintiffs allege that they

2

are the prevailing parties in S.F. I and are thus entitled to the costs of the action, including attorneys' fees, pursuant to 20 U.S.C. § 1415(i)(3)(B)(i), which provides that "the court, in its discretion, may award reasonable attorneys' fees." Such attorneys' fees can be awarded "to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). Here, Plaintiffs allege that they are entitled to "attorneys' fees in the amount of $18,438.43 in addition to the costs incurred in defending S.F. I." (Compl. ¶ 17).

With regard to the second administrative proceeding, S.F. II, Plaintiffs initiated an administrative proceeding against the Board before the North Carolina OAH, alleging that the Board deprived S.F. of a Free Appropriate Public Education ("FAPE") and seeking "all appropriate relief available under the IDEA to remedy the deprivation of S.F.'s right to a FAPE." (Compl. ¶¶ 18-19). However, on March 1, 2012, the Administrative Law Judge presiding over the Hearing on Plaintiffs' Petition in S.F. II allowed the Board's Motion for a Directed Verdict and entered a dismissal of the action pursuant to North Carolina Rule of Civil Procedure 41(b). (Compl. ¶ 25). Plaintiffs' attorney of record received a copy of this dismissal on March 12, 2012. (Compl. ¶ 32).

Following these two administrative proceedings, Plaintiffs filed this action alleging claims arising out of S.F. I and S.F. II. Specifically, Plaintiffs' Complaint contains a claim arising out of S.F. I for attorneys' fees based on Plaintiffs' alleged status as "prevailing parties" in S.F. I. Additionally, Plaintiffs' Complaint contains two claims arising out of the S.F. II proceeding. The first claim arising out of S.F. II seeks a declaration that the Board deprived S.F. of a FAPE and demands "all appropriate relief available under IDEA to fashion a complete remedy for harms

3

caused by the Board's deprivation of S.F.'s right to a [FAPE]." (Compl. ¶ 36). Additionally, should the Court find that S.F.'s rights to a FAPE have been violated, Plaintiffs would be the "prevailing parties" in S.F. II. As such, the second claim arising out of S.F. II seeks attorneys' fees based on Plaintiffs' potential status as "prevailing parties" in S.F. II. (Compl. ¶¶ 45-46).

In response to Plaintiffs' Complaint, the Board timely filed a Motion to Dismiss [Doc. #14], seeking dismissal of all of Plaintiffs' claims against the Board pursuant to Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6). Following the Board's Motion to Dismiss, on October 9, 2012, Plaintiffs filed an Amended Complaint [Doc. #18] asserting new tort claims for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress against the Board. Additionally, Plaintiffs' Amended Complaint added a new Defendant, Amanda Kentfield ("Defendant Kentfield"), a teacher assigned to teach S.F. in a self-contained autistic classroom operated by the Board. (Am. Compl. ¶ 4). Plaintiffs' Amended Complaint asserts tort claims against Defendant Kentfield for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. Additionally, Plaintiffs' Amended Complaint asserts a 42 U.S.C. § 1983 claim against Defendant Kentfield based on her actions as an employee of the Board. (Am. Compl. ¶ 59).

In response to the filing of Plaintiffs' Amended Complaint, the Board filed a Motion to Dismiss the Amended Complaint [Doc. #19] pursuant to Federal Rule of Civil Procedure 41(b) based on the untimely filing of Plaintiffs' Amended Complaint. Defendant Kentfield also filed a Motion to Dismiss the Amended Complaint [Doc. #30], which adopts the Board's arguments regarding the untimely filing of Plaintiffs' Amended Complaint. In that regard, the Court will

4

first address the alleged untimely filing of Plaintiffs' Amended Complaint.

## II.  MOTIONS TO DISMISS PLAINTIFFS' AMENDED COMPLAINT [Docs. #19, #30]

Both Defendant Board and Defendant Kentfield (collectively "Defendants") have filed Motions to Dismiss Plaintiffs' Amended Complaint [Doc. #19 and Doc. #30, respectively] pursuant to Federal Rule of Civil Procedure 41(b) based on the alleged untimely filing of Plaintiffs' Amended Complaint.  In support of their Motions to Dismiss, Defendants argue that because Plaintiffs' Amended Complaint "was not timely filed, Plaintiffs were required . . . to obtain the Board's consent or the Court's leave to file their Amended Complaint.[1]"  (Motion to Dismiss Amended Complaint [Doc. #19], at 2).  Because such consent or leave was not obtained, Defendants request that "[t]he claims asserted in the untimely Amended Complaint . . . be dismissed" and "[o]nly the original Complaint [Doc. #1] and the claims appearing therein . . . be subject to further review."  (Motion to Dismiss Amended Complaint [Doc. #19], at 2).

More specifically, Defendants seek dismissal of Plaintiffs' Amended Complaint under Rule 41(b), which provides that "[i]f the plaintiff fails . . . to comply with [the Federal Rules of Civil Procedure] or a court order, a defendant may move to dismiss the action or any claim against it."  Fed. R. Civ. P. 41(b).  Here, the relevant Federal Rule of Civil Procedure is Rule 15, which governs the filing of amended pleadings.  Under Rule 15(a)(1)(B), a party may amend its pleading as a matter of course "21 days after service of a motion under Rule 12(b)."  Fed. R.

---

[1]The Court notes that because the Motion to Dismiss Plaintiffs' Amended Complaint filed by Defendant Kentfield adopts the Board's arguments for dismissal pursuant to Rule 41(b), citations to arguments in support of such dismissal will reference the Board's Motion to Dismiss [Doc. #19] and Supporting Memorandum [Doc. #20].

Civ. P. 15(a)(1)(B).[2]  If an amendment is not made within this prescribed time period, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  When a party seeks the court's leave to amend its pleading, the court should freely grant such leave "when justice so requires."  Fed. R. Civ. P. 15(a)(2).

Here, the Board filed a Motion to Dismiss [Doc. #14] Plaintiffs' original Complaint on September 6, 2012.  Under the relevant Federal and Local Rules, Plaintiffs had until midnight on Monday, October 1, 2012, to file an Amended Complaint or a Response to Defendant Board's Motion to Dismiss.[3]  See Fed. R. Civ. P. 15(a)(1)(B); Fed. R. Civ. P. 6; L.R. 7.3(f). However, instead of filing an Amended Complaint as of right within the prescribed time period, Plaintiffs filed an Amended Complaint [Doc. #16] "in error" at 12:07 a.m. on October 2, 2012, then filed a corrected Amended Complaint [Doc. #17] "in error" at 1:56 a.m. on October 2, 2012.  Following these two filings, Plaintiffs filed a third Amended Complaint [Doc. #18] on October 9, 2012.  This third Amended Complaint is the subject of Defendants' Motions to Dismiss [Docs. #19, #30], as it is the only Amended Complaint of the three filed that is not designated as being filed "in error."  As such, for the purposes of Defendants' Motions to Dismiss Plaintiffs' Amended Complaint, the Court will consider the Amended Complaint [Doc. #18] filed on October 9, 2012 as the operative Amended Complaint at issue.  In that regard,

_____

[2]Similarly, under Local Rule 7.3(f), a respondent to a motion "shall file a response, including brief, within 21 days after service of the motion."  L.R. 7.3(f).

[3]This date encompasses three additional days added to the deadline for an action when the party receives service via electronic means.  See Fed. R. Civ. P. 6(b).  Additionally, this date was noted by the Clerk's Office on the docket entry accompanying Defendant Board's Motion to Dismiss [Doc. #14].

because Plaintiffs' Amended Complaint needed to be filed by October 1, 2012, but was not filed until October 9, 2012, the Court finds that Plaintiffs' Amended Complaint [Doc. #18] was untimely filed.[4]

Pursuant to Rule 15(a)(2), because Plaintiffs' Amended Complaint was filed out of time, Plaintiffs were required to obtain consent of Defendants or leave of the Court for such filing. However, Plaintiffs have neither obtained the consent of Defendants nor sought leave of this Court to file an Amended Complaint. Further, while Plaintiffs have filed a Response in Opposition [Doc. #23] to the Board's Motion to Dismiss Plaintiffs' Amended Complaint as well as a Response in Opposition [Doc. #33] to Defendant Kentfield's Motion to Dismiss Plaintiffs' Amended Complaint, Plaintiffs fail to address the Defendants' arguments with regard to the untimely filing of their Amended Complaint in either of these Responses. Instead, Plaintiffs' only reference to its Amended Complaint within these Responses occurs in the context of addressing an immunity argument offered by the Board. In this context, Plaintiffs acknowledge that any immunity issues will be moot "should the Court allow . . . Plaintiffs' motion for leave to amend the pleadings to allege Defendant's waiver of immunity from Plaintiffs' state law claims." (Pls.' Response in Opposition [Doc. #23], at 8). However, Plaintiffs have not filed any such motion for leave up to this date.

While the Court recognizes that Rule 15(a)(2) instructs the Court to "freely give leave [to

---

[4]The Court notes that even if it were to consider either of the two earlier Amended Complaints [Docs. #17, #18] filed "in error," the Court's untimeliness analysis would remain unchanged, as both of the Amended Complaints filed "in error" were filed after the October 1, 2012 deadline.

amend] when justice so requires," Plaintiffs have not sought such leave here despite having notice of their untimely filing.[5]  Further, the Court does not find that "justice so requires" the Court to construe Plaintiffs' Amended Complaint itself as a motion for leave to file an amended complaint, as Plaintiffs are represented by counsel in this matter.  See Lee v. City of Philadelphia, CIV. A. No. 08-862, 2009 WL 637459, at *1 (E.D. Pa. Mar. 9, 2009) (treating a filed amended complaint as a request for leave to file an amended pleading under Rule 15 "on account of [the] plaintiff's *pro se* status").  In that regard, the Court finds that Plaintiffs have wilfully chosen not to follow proper procedures in filing their Amended Complaint in violation of Rule 15(a).  As such, the Court will grant Defendants' Motions to Dismiss [Docs. #19, #30] and will dismiss Plaintiffs' Amended Complaint [Doc. #18] pursuant to Rule 41(b)  In doing so, the Court will proceed on the original Complaint [Doc. #1] filed by Plaintiffs in the underlying action.  Additionally, pursuant to the dismissal of Plaintiffs' Amended Complaint, the Court will deny as moot Defendant Board's Motion to Strike [Doc. #28], as it seeks to strike Plaintiffs' Response to Defendant Board's Motion to Dismiss Plaintiffs' Amended Complaint.

III.    DEFENDANT BOARD'S MOTION TO DISMISS PLAINTIFFS' ORIGINAL
        COMPLAINT [Doc. #14]

---

[5]While Plaintiffs' Amended Complaint [Doc. #18] filed on October 9, 2012, states that "Plaintiffs . . . file this First Amended Complaint prior to the filing of a responsive pleading in this action pursuant to Rule 15 of the Federal Rules of Civil Procedure," this statement is incorrect, as a responsive pleading was filed by the Board on September 6, 2012, in the form of the Board's Motion to Dismiss [Doc. #14] Plaintiffs' original Complaint.  However, to the extent Plaintiffs mistakenly believed their Amended Complaint was timely filed, Plaintiffs were put on notice as to their untimeliness upon the filing of the Board's Motion to Dismiss [Doc. #19] Plaintiffs' Amended Complaint.  Still, Plaintiffs chose not to address their untimeliness in their Response to the Board's Motion to Dismiss Plaintiffs' Amended Complaint.

Because the Court will dismiss Plaintiffs' Amended Complaint [Doc. #18], the operative Complaint in the underlying matter is Plaintiffs' original Complaint [Doc. #1] filed against the Board on June 1, 2012. The Board timely filed a Motion to Dismiss [Doc. #14] Plaintiffs' original Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6). However, Plaintiffs did not file a response to the Board's Motion to Dismiss.[6] Pursuant to Local Rule 7.3(k), "[i]f a respondent fails to file a response [to a motion] . . . the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." L.R. 7.3(k). Therefore, because Plaintiffs have failed to file a response to Defendant Board's Motion to Dismiss, the Court could, in its discretion, grant Defendant Board's Motion to Dismiss without further discussion.[7] However, as set forth below, the Court will undertake a review of this matter to determine whether Defendant Board's Motion to Dismiss [Doc. #14] should be granted.

## A.      Standard of Review

### 1. Motion to Dismiss Pursuant to Rule 12(b)(6)

---

[6]Instead of filing a response to the Board's Motion to Dismiss, Plaintiffs chose to file an untimely Amended Complaint that will be stricken by the Court.

[7]The Court notes that treating Defendant Board's Motion to Dismiss as an uncontested motion would be appropriate under the Local Rules. Further, the Court notes that even if Plaintiffs had sought leave to file their Amended Complaint and the Court had allowed such leave, Defendant Board's Motion to Dismiss Plaintiffs' Amended Complaint would have also been appropriately treated as an uncontested motion, as Plaintiffs filed an untimely Response to Defendant Board's Motion to Dismiss Plaintiffs' Amended Complaint and this untimely Response would have been stricken by the Court pursuant to the Board's Motion to Strike [Doc. #28].

9

The Board moves to dismiss Plaintiffs' claim arising out of S.F. I pursuant to Federal Rule Federal Rule of Civil Procedure 12(b)(6) based on an allegation that the claim is time-barred. The Fourth Circuit has recognized that "Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses." Richmond, Fredericksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993). As such, a Motion to Dismiss filed under Rule 12(b)(6) "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007)(en banc). However, "[i]n the limited circumstances where the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint." Richmond, Fredericksburg & Potomac R. Co., 4 F.3d at 250. In that regard, reaching a motion to dismiss time-barred claims pursuant to Rule 12(b)(6) is only appropriate "if all facts necessary to the affirmative defense 'clearly appear [] on the face of the complaint.'" Goodman, 494 F.3d at 464 (alteration in original) (emphasis omitted)(quoting Richmond, Fredericksburg & Potomac R. Co., 4 F.3d at 250).

## 2.    Motion to Dismiss Pursuant to Rule 12(b)(1)

The Board moves to dismiss Plaintiffs' two claims arising out of S.F. II pursuant to Federal Rule of Civil Procedure 12(b)(1) based on the Board's assertion that the Court lacks subject matter jurisdiction over such claims. A court may grant a Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir.

1999).  Further, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009). In that regard, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Id. at 192.

### B.    Statutory Framework

Plaintiffs' claims against the Board arise out of the disposition of two administrative proceedings under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.  Congress originally enacted the IDEA in 1970 to "ensure that all children with disabilities are provided 'a free appropriate public education which emphasizes special education and related services designed to meet their unique needs [and] to assure that the rights of [such] children and their parents or guardians are protected.'" Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 129 S.Ct. 2484, 2491, 174 L.Ed.2d. 168 (2009).  Under the IDEA, all states receiving federal education funds are required to provide disabled children with a free appropriate public education ("FAPE"), which "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." Cone v. Randolph Cnty. Sch. Bd. of Educ., 657 F. Supp. 2d 667, 669 (M.D.N.C. 2009)(internal quotations omitted).  "Such an educational benefit must be provided to a disabled child in the least restrictive and appropriate environment, with the child participating, to the extent possible, in the same activities as non-disabled children."

O.M. ex rel. McWhirter v. Orange Cnty. (N.C.) Bd. of Educ., 1:09CV692, 2013 WL 664900, at *1 (M.D.N.C. Feb. 22, 2013), report and recommendation adopted sub nom., O.M. ex rel. McWhirter v. Orange Cnty., N.C. Bd. of Educ., 1:09-CV-692, 2013 WL 1212880 (M.D.N.C. Mar. 25, 2013) (internal quotations omitted).

"A school provides a FAPE by developing an [Individualized Educational Plan ("IEP")]." J.P. ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va., 516 F.3d 254, 257 (4th Cir. 2008). An appropriate IEP "'must contain statements concerning a disabled child's level of functioning, set forth measurable annual achievement goals, describe the services to be provided, and establish objective criteria for evaluating the child's progress.'" O.M. ex rel. McWhirter, 2013 WL 664900, at *1 (quoting MM ex rel. DM v. Sch. Dist. of Greenville Cnty., 303 F.3d 523, 527 (4th Cir. 2002)). Further, states receiving IDEA funds must "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education." Cone, 657 F. Supp. 2d at 669-70 (citing 20 U.S.C. § 1415(a)). These procedural safeguards include a parent or guardian's right to request an "impartial due process hearing" if the parent or guardian is not satisfied with any matter related to the identification, evaluation, or educational placement of a child, or with the provision of a FAPE to a child. See 20 U.S.C. § 1415(b)(6)(A), 20 U.S.C. § 1415(f). This due process hearing "shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f)(1)(A).

To facilitate these procedural safeguards, North Carolina employs a two-tiered

administrative review system.  See N.C. Gen. Stat. §§ 115C-109.6, 115C-109.9.  At the first tier, "[a]ny party may file with the Office of Administrative Hearings a petition to request an impartial hearing with respect to any matter relating to . . . the provision of a free appropriate public education of a child."  N.C. Gen. Stat. § 115C-109.6(a).  The petition is referred to an Administrative Law Judge ("ALJ"), and the ALJ "shall issue a written decision regarding the issues" and containing "findings of fact and conclusions of law."  N.C. Gen. Stat. § 115C-109.6(f).  "[T]he decision of the administrative law judge becomes final and is not subject to further review unless appealed to the Review Officer."  N.C. Gen. Stat. § 115C-109.6(f).

An appeal to the Review Officer is the second tier of the administrative process in North Carolina, during which "any party aggrieved by the findings and decision of a hearing officer . . . may appeal the findings and decision within 30 days after receipt of notice of the decision by filing a written notice of appeal with the person designated by the State Board."  N.C. Gen. Stat. § 115C-109.9(a).  Following such an appeal, the State Board "shall appoint a Review Officer ["SRO"] . . . [who] shall conduct an impartial review of the findings and decision appealed . . . and make an independent decision upon completion of the review."  N.C. Gen. Stat. § 115C-109.9(a).

Following the decision of the SRO, "any party who is aggrieved by the decision of the [SRO] . . . may institute a civil action . . . in federal court."  N.C. Gen. Stat. § 115C-109.9(d).  This right of appeal from the decision of the SRO is also recognized within the IDEA itself, which mandates that "any party aggrieved by the findings and decision made . . . shall have the right to bring a civil action . . . in a district court."  20 U.S.C. § 1415(i)(2)(A).  See also Cone, 657

13

F. Supp. 2d at 670 ("After the state level appeals process is exhausted, an aggrieved party may seek further review by bringing an action in a federal district court.").

In addition to the above-discussed procedural safeguards, the IDEA also provides a mechanism through which "the court, in its discretion, may award reasonable attorneys' fees as part of the costs" in "any action or proceeding brought under [the IDEA]." 20 U.S.C. § 1415(i)(3)(B)(i). Such an award may be made to a "prevailing party," which includes a "prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). Any attorneys' fees awarded "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C).

With this statutory framework in mind, the Court will now address the Board's Motion to Dismiss Plaintiffs' original Complaint containing claims arising from the first administrative proceeding, S.F. I, and the second administrative proceeding, S.F. II.

### C. First Administrative Proceeding: S.F. I

As previously discussed, in S.F. I, the Board initiated proceedings against the Plaintiffs "on the grounds that S.F.'s parents had requested additional educational evaluations" and had "advised the Board of their intent to obtain an independent educational evaluation ("IEE"). (Compl. ¶ 8). At the time the Board initiated the proceeding in S.F. I, Plaintiffs allege that the Board had "failed to conduct the additional evaluations necessary to identify S.F.'s educational needs. . . [had] refused to act on S.F.'s parents' request for an IEE, [had] failed to explain their reasoning for failing to do so, and [had] refused to fund an IEE." (Compl. ¶ 8). However,

14

before a hearing on the proceeding, the Board voluntarily dismissed its proceeding without prejudice on November 24, 2010, "asserting that the Board would reimburse Plaintiffs the cost of the IEE they obtained." (Compl. ¶ 10). After this dismissal without prejudice, the proceeding remained open until November 24, 2011 under the one-year period for the Board to re-file the action pursuant to North Carolina Rule of Civil Procedure 41(a), but the Board did not re-file the action within this time period. Based on this outcome, Plaintiffs allege that they were the "prevailing party" in S.F. I and brought the pending claim for attorneys' fees and costs arising out of S.F. I pursuant to 20 U.S.C. § 1415(i)(3)(B)(i), which gives a court discretion to award reasonable attorneys' fees "to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I)[8]

Defendant Board moves to dismiss Plaintiffs' claim for attorneys' fees and costs arising out of S.F. I pursuant to Rule 12(b)(6) based on an allegation that such a claim is time-barred. Specifically, the Board recognizes that "IDEA does not contain a specific statute of limitations for attorneys' fees claims" but argues that "Plaintiffs' claims for attorneys' fees should be

---

[8]The Court notes that the term "prevailing party" as used in IDEA is not defined in the statute. However, courts have recognized that a "prevailing party" under IDEA is one who succeeds "on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." Wilson v. Gov't of Dist. of Columbia, 269 F.R.D. 8, 15 (D.D.C. 2010). Based on the allegations in the Complaint, the Board brought the original proceeding after refusing to fund an IEE requested by Plaintiffs. However, upon voluntary dismissal of the proceeding in S.F. I, the Complaint alleges that the Board reimbursed Plaintiffs for the costs of the IEE obtained by Plaintiffs. In that regard, the Court notes that this payment could arguably instill "prevailing party" status on Plaintiffs. Further, Defendant Board does not challenge such a status at this time. In that regard, for the purposes of the Court's analysis of Defendant Board's Motion to Dismiss Plaintiffs' S.F. I claim, the Court will treat Plaintiffs as "prevailing parties" under the IDEA.

governed by the applicable limitations period for IDEA claims under North Carolina law." (Def.'s Mem. in Support [Doc. #15], at 10-11). By statute, North Carolina allows "any party who is aggrieved by the decision of the Review Officer . . . [to] institute a civil action in State court within 30 days after receipt of the notice of the decision or in federal court as provided in 20 U.S.C. § 1415." N.C. Gen. Stat. § 115C-109.9(d). Further, 20 U.S.C. § 1415, as referenced within the North Carolina statute, specifies that "[t]he party bringing the action shall have 90 days from the date of the decision of the hearing officer to bring such an action, or, if the State has an explicit time limitation for bringing such action . . . in such time as the State law allows." 20 U.S.C. § 1415(i)(2)(B). Defendant argues that applying either the 30-day or 90-day limitations period referenced within N.C. Gen. Stat. § 115C-109.9(d), Plaintiffs' S.F. I claim for attorneys' fees is untimely, as "[t]he 30-day period after the voluntary dismissal became final ended on Tuesday, December 27, 2011" and "the 90-day period after the voluntary dismissal became final ended on February 22, 2012." (Def.'s Mem. in Support [Doc. #15], at 11). However, Plaintiffs did not file the current action until "June 1, 2012, well after both these time periods expired." (Def.'s Mem. in Support [Doc. #15], at 11). As such, Defendant Board contends that Plaintiffs' S.F. I claim should be dismissed pursuant to Rule 12(b)(6).

It is well-settled that "[i]n any action or proceeding brought under [the IDEA], the court, in its discretion, may award reasonable attorneys' fees." 20 U.S.C. § 1415(i)(3)(B)(i). However, while the IDEA contains a specific statute of limitations governing the commencement of a civil action after the exhaustion of administrative remedies, the IDEA contains no such statute of

limitations governing the award of attorneys' fees.[9] "When Congress fails to provide a statute of limitations, federal courts borrow the most analogous state statute of limitations, provided that it is not inconsistent with underlying federal policies." C.M. ex rel. J.M. v. Bd. of Educ. of Henderson Cnty., 241 F.3d 374, 379 (4th Cir. 2001). Therefore, the Court here must "first evaluate which North Carolina statute of limitations constitutes the most analogous limitations period" and must next "decide whether that period is in any way inconsistent with the federal policies contained in the IDEA." Id.

With regard to determining which North Carolina statute of limitations constitutes the most analogous limitations period, the Court notes that circuits are currently divided over the appropriate state statute of limitations to apply to actions for attorneys' fees under the IDEA. See B.D. ex rel. Doucette v. Georgetown Pub. Sch. Dist., CIV.A. 11-10692-DPW, 2012 WL 4482152 (D. Mass. Sept. 27, 2012) ("There is a clear split in the circuits as to the source of the most analogous state statute of limitations for fee actions under the IDEA."). "The most

---

[9]The Court notes that prior to 2004, the IDEA did not specify a statute of limitations for the commencement of a civil action. See Meridian Joint Sch. Dist. No. 2 v. D.A., 1:11-CV-00320-CWD 2013 WL 3270424, at *13 (D. Idaho June 25, 2013). However, in 2004, Congress "amended the IDEA, specifying a limitations period for such appeals" of 90 days. Id. However, "the paragraph granting prevailing parties the ability to obtain attorneys' fees . . . was untouched by the 2004 amendment." Id. at *14. As such, courts have concluded, and this Court agrees, that "had Congress intended this same statute of limitations period to apply to actions to recover attorney fees after prevailing at the administrative hearing stage, it easily could have . . .[b]ut it did not. P.M. v. Evans-Brant Cent. Sch. Dist., 09-CV-686S, 2012 WL 42248, at *4 (W.D.N.Y. Jan. 9, 2012). In that regard, the Court recognizes that no statute of limitations is provided under the IDEA for attorneys' fees claims. See Wilson, 269 F.R.D. at 16 ("Under the subsection of the IDEA allowing for an action to recover attorney' fees, no statute of limitations is provided.").

prominent division among courts lies in determining whether the action [for attorneys' fees] is ancillary to, or independent from, the underlying administrative proceeding." Wilson, 269 F.R.D. at 16. This distinction is important, as "[c]ourts that find an action for attorneys' fees independent from the underlying IDEA administrative proceedings assign a longer statute of limitations period, often periods spanning several years, whereas courts finding an action for attorneys' fees ancillary to the underlying IDEA administrative proceedings assign shorter statute of limitations periods comparable to a period applied to judicial review of the administrative proceeding itself." Id. at 16-17.

More specifically, both the "Sixth and Seventh Circuits have held that actions for attorneys' fees under the IDEA are ancillary to the judicial review of the administrative proceedings and should therefore be governed by [a] statute dealing with judicial review of state agencies." Meridian Joint Sch. Dist. No. 2, 2013 WL 3270424, at *16 (citing King v. Floyd Cnty. Bd. of Educ., 228 F.3d 622 (6th Cir. 2000) (applying a 30-day limitations period as set forth in a Kentucky statute governing appeal from an administrative decision); Powers v. Indiana Dep't of Educ., 61 F.3d 552 (7th Cir. 1995)(applying a 30-day limitations period as set forth in an Indiana statute governing appeal from an administrative decision)). In contrast, the Eleventh Circuit has held that a claim for attorneys' fees under IDEA is "more analogous to an independent action predicated on statutory liability than an appeal of an agency decision." Meridian Joint Sch. Dist. No. 2, 2013 WL 3270424, at *16 (citing Zipperer v. Sch. Bd. of Seminole Cnty., 111 F.3d 847, 851 (11th Cir. 1997) (applying a 4-year limitations period under Florida's statute of limitations for general statutory liability).

18

The Court recognizes that the Fourth Circuit has not yet addressed whether an action for attorneys' fees under IDEA is ancillary to, or independent from, the underlying administrative proceeding. However, having considered the relevant statutory text along with the relevant arguments, the Court is most persuaded by the reasoning supporting the classification of an action for attorneys' fees under the IDEA as ancillary to the underlying administrative proceeding. While a request for attorneys' fees under the IDEA is "not a direct appeal of a decision made by the agency at the administrative hearing, as it does not call into question the child's evaluation or placement," it is evident that "the parent's entitlement to fees arises out of the same controversy and depends entirely on the administrative hearing for its existence." Kaseman v. District of Columbia, 444 F.3d 637, 642 (D.C. Cir. 2006). Indeed, "adjudicating the attorneys' fee issues often necessitates close scrutiny of the merits of the underlying claims for the purposes of determining the extent to which the plaintiff was a prevailing party and the reasonableness of the time expended in achieving victory." Mayo v. Booker, 56 F. Supp. 2d 597, 598 (D. Md. 1999). In that respect, [a]lthough an action for attorneys' fees constitutes an independent cause of action [under the IDEA], by its very nature it is ancillary to the underlying dispute on the merits." Id. As such, the Court finds that an action for attorneys' fees under IDEA is most appropriately classified as ancillary to the underlying administrative proceeding.

Pursuant to this conclusion, the Court must determine the most analogous state statute of limitations. Here, because the Court classifies an action for attorneys' fees as ancillary to the underlying administrative proceeding, the most analogous statute of limitations is North

19

Carolina General Statute § 115C-109.9(d), the North Carolina statute governing the limitations period for instituting a civil action under the IDEA. This statute provides that "any party who is aggrieved by the decision of the Review Officer . . . may institute a civil action in State court within 30 days after receipt of the notice of the decision or in federal court as provided in 20 U.S.C. § 1415." N.C. Gen. Stat. § 115C-109.9(d). As a threshold matter, the Court notes that one reading of this statute is that the 30-day limitations period is only applicable to an action being instituted in state court, while an action being instituted in federal court is subject to the 90-day limitations period provided under 20 U.S.C. § 1415(i). However, this reading is potentially in conflict with the language of the IDEA itself, which specifies that the 90-day limitation shall apply unless "the State has an explicit time limitation," in which case the applicable time limit is "such time as the State law allows." 20 U.S.C. § 1415(i)(2)(B). Further, courts have recognized that "[w]henever a conflict exists between the procedural safeguards mandated by 20 U.S.C. § 1415 and State law[,] the applicable federal law is controlling." <u>Vogel v. Sch. Bd. of Montrose R-14 Sch. Dist.</u>, 491 F. Supp. 989, 993 (W.D. Mo. 1980). In that regard, another reading of the statute is that the 30-day limitation imposed within the North Carolina statute is applicable to both state and federal civil actions.

However, while the Court has determined that the most analogous statute North Carolina General Statute § 115C-109.9(d), at this time, the Court need not determine whether the 30-day limitations period or 90-day limitations period referenced within the statute is applicable to a claim for attorneys' fees in federal court because Plaintiffs' S.F. I claims are barred under either the 30-day or 90-day limitations period. The Board voluntarily dismissed

20

the proceedings in S.F. I on November 24, 2010, and the one year period for re-filing pursuant to North Carolina Rule of Civil Procedure 41(a) expired on November 24, 2011. From November 24, 2011, the 30-day period to file a claim for attorneys' fees became final on Tuesday, December 27, 2011,[10] and the 90-day period to file a claim for attorneys' fees became final on Wednesday, February 22, 2012. However, Plaintiffs did not file the current action until June 1, 2012. As such, under either limitations period provided under North Carolina General Statute § 115C-109.9(d), Plaintiffs' claim for attorneys' fees in S.F. I is time-barred.

Having identified the most analogous North Carolina statute of limitations to be North Carolina General Statute § 115C-109.9(d), the Court must also determine whether applying either the 30-day or 90-day limitations periods would be inconsistent with the federal policies contained in the IDEA. The IDEA itself recognizes that its purpose is to "ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(B). While the Court recognizes that "in some other context . . . a short limitations period might conflict with the IDEA goal of parental participation in the educational process," this concern is not as prominent with a claim for attorneys' fees, as "the lawyer has already been hired" so the shorter limitations period "does not run the risk of hurting vulnerable unrepresented parents." King, 228 F.3d at 627. Additionally, the rights of a child with a disability are not harmed by a 30-day or 90-day limitations period, as only a "prevailing party" is entitled to attorneys' fees, meaning that "by the time the attorneys' fees dispute becomes ripe, the child will

_____

[10]This date takes into account the federal holiday for Christmas recognized on December 26, 2011.

have already received a decision regarding whatever educational benefits he or she is entitled to receive." <u>B.D. ex rel. Docuette</u>, 2012 WL 4482152, at *9. In that regard, the Court finds that applying a limitations period of 30-days or 90-days under North Carolina General Statute § 115C-109.9(d) does not violate the federal policies contained in the IDEA. As such, because Plaintiffs' S.F. I claims were brought well outside of the 30-day and 90-day periods set forth in North Carolina General Statute § 115C-109.9(d), the Court will grant Defendant Board's Motion to Dismiss Plaintiffs' S.F. I claim as time-barred pursuant to Rule 12(b)(6).

### D. Second Administrative Proceeding: S.F. II

In S.F. II, Plaintiffs initiated a proceeding with the North Carolina OAH against the Board, alleging the deprivation of S.F.'s right to a FAPE and seeking all appropriate relief available under the IDEA. At the first tier of the administrative process, the ALJ dismissed the proceeding pursuant to North Carolina Rule of Civil Procedure 41(b). Following this dismissal, Plaintiffs filed the pending civil action alleging two claims arising out of S.F. II for an alleged deprivation of a FAPE and for attorneys' fees. However, Plaintiffs filed the pending civil action before appealing the decision of the ALJ to the State Board to be reviewed by an SRO, the second tier of the administrative process in North Carolina. Based on Plaintiffs failure to appeal to the SRO, Defendant Board moves to dismiss Plaintiffs' claims arising from S.F. II pursuant to Rule 12(b)(1) based on a lack of subject matter jurisdiction. Specifically, the Board argues that "Plaintiffs did not seek review by a State Review Officer and have therefore failed to exhaust their administrative remedies." (Def.'s Mem. in Support [Doc. #15], at 5). In that regard, the Board contends that "Plaintiffs have deprived this Court of subject matter

22

jurisdiction over their S.F. II claims, which should therefore be dismissed." (Def.'s Mem. in Support [Doc. #15], at 5).

It is well settled that a court may not reach the merits of a claim if it does not have subject matter jurisdiction over the claim. See Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 479-80 (4th Cir. 2005). To support their argument that the Court lacks subject matter jurisdiction over claims arising out of S.F. II, the Board relies primarily on the Fourth Circuit case of MM ex rel. DM v. School District of Greenville County., 303 F.3d 523 (4th Cir. 2002). In MM, a disabled child, MM, and her parents cross-appealed four aspects of a South Carolina district court's ruling under the IDEA, one aspect of which involved a challenge to the defendant school district's failure to develop an IEP for MM for three consecutive school years. MM, 303 F.3d at 535. However, it was undisputed that MM's parents failed to request a due process hearing for these three school years. Id. In affirming the district court's dismissal of such claims, the Fourth Circuit noted that MM's parents must have "exhausted their administrative remedies for *each academic year* in which an IEP is challenged." Id. at 536 (emphasis in original). Because such exhaustion did not occur, the Fourth Circuit recognized that "[t]he failure of the Parents to exhaust their administrative remedies for [the three school years at issue] deprives us of subject matter jurisdiction over those claims, and we agree with the district court that claims for those years must fail." Id. Thus, under MM, a failure to exhaust administrative remedies under IDEA deprives the court of subject matter

23

jurisdiction over such claims.[11]

However, while the treatment of IDEA's exhaustion requirement as jurisdictional is consistent with the applicable Fourth Circuit precedent found in MM, the Court recognizes that at this time, the question of whether IDEA's exhaustion requirement creates a jurisdictional bar is somewhat tentative in light of more recent Supreme Court rulings clarifying the difference between procedural rules that are "jurisdictional" rules, which deprive a court of subject matter jurisdiction, and procedural rules that are "claim-processing" rules, which must be pled as an affirmative defense or be forfeited. See Payne v. Peninsula School Dist., 653 F.3d 863, 867 (9th Cir. 2011), cert. denied, 132 S. Ct. 1540, 182 L. Ed. 2d 161 (U.S. 2012) (citing Henderson v. Shinseki, 131 S. Ct. 1197, 1198, 179 L. Ed. 2d 159 (2011); Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 130 S. Ct. 1237, 1243-48, 176 L.E.2d 18 (2010)). Indeed, circuits are split as to whether a failure to exhaust administrative remedies under IDEA creates a bar to jurisdiction or is more properly considered to be a claim-processing rule that must be pled as an affirmative

---

[11]Following MM, several district courts in the Fourth Circuit have recognized that a failure to exhaust administrative remedies deprives the court of subject matter jurisdiction over IDEA claims. See Ekweani v. Bd. of Educ. of Howard Cnty., CIV. CCB-07-3432, 2008 WL 5525606 (D. Md. Dec. 31, 2008) ("The Fourth Circuit has held that exhaustion of these administrative requirements [under the IDEA] is necessary, and that federal action is premature where plaintiffs have not exhausted state administrative remedies"); Smith v. James C. Hormel Sch. of Virginia Inst. of Autism, CIV. A. 3:08CV00030, 2009 WL 1081079 (W.D. Va. Apr. 22, 2009), report and recommendation adopted sub nom., Smith v. James C. Hormel Sch. of Virginia Inst. of Autism, 3:08CV00030, 2009 WL 1360657 (W.D. Va. May 14, 2009) ("Exhaustion of administrative remedies is required under [the IDEA]"); J.D. v. Kanawha Cnty. Bd. of Educ., 2:06-CV-00167, 2007 WL 2257666 (S.D.W. Va. Aug. 3, 2007) ("[A] potential litigant must exhaust the administrative scheme outlined in [the IDEA] as a prerequisite to filing a civil action . . . [as the IDEA] contemplates that decisions regarding educational policy will continue to be made at the local level and reviewed at the local or state level prior to any federal court involvement.").

defense. See Payne, 653 F.3d at 867-68 (recognizing that the "Fourth and Eighth Circuits share [the Ninth Circuit's] earlier assumption [the IDEA language] creates a jurisdictional limitation" while "the Seventh and Eleventh Circuits have treated the exhaustion requirement as an affirmative defense, rather than a jurisdictional requirement"). This Court itself has questioned the "propriety of attributing jurisdictional significance to the IDEA's administrative remedies in light of recent Supreme Court jurisprudence." B.W. v. Durham Public Schools, 2010 WL 2869558, at *6.[12] However, at this time, because there has been no clear holding otherwise, the Court will follow MM in concluding that "[t]he failure of the Parents to exhaust their administrative remedies . . . deprives [the court] of subject matter jurisdiction over those claims. MM, 303 F.3d at 536.[13]

---

[12]However, the Court notes that in B.W., the issue was not directly before the Court, as the plaintiffs had exhausted all administrative remedies before filing a civil action. B.W., 2010 WL 2869558, at *7 ("[N]o jurisdictional bar exists in this case because Plaintiffs exhausted administrative remedies. An ALJ held an impartial due process hearing . . . as required by 20 U.S.C. § 1415(f)(1)(A) and N.C. Gen. Stat. § 115C–109.6. Subsequently, an SRO reviewed the appeal of the ALJ's decision . . . as required by 20 U.S.C. § 1415(g) and N.C. Gen. Stat. § 115C–109.9.").

[13]Even assuming, *arguendo*, that the IDEA's exhaustion requirement is properly treated as a claim-processing rule and not a jurisdictional rule, Plaintiffs' claims here would still be barred for failure to exhaust, as Defendant has clearly asserted the defense of exhaustion and it is evident from the face of Plaintiffs' Complaint that Plaintiffs did not seek review from an SRO. See Richmond, Fredericksburg & Potomac R. Co., 4 F.3d at 250 ("[I]n the limited circumstances where the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint."). Thus, even if the Court chose to treat the exhaustion requirement as a "claim-processing" rule, the Board would have asserted a successful affirmative defense barring Plaintiffs' S.F. II claims. See Muskrat v. Deer Creek Pub. Sch., 715 F.3d 775, 783-84 (10th Cir. 2013) (finding that whether the IDEA's exhaustion requirement was jurisdictional need not be determined because the defendants had raised the question of "IDEA exhaustion below and do raise it again here"); Baldessarre v. Monroe-Woodbury Cent. Sch. Dist., 820 F. Supp. 2d 490, 503 (S.D.N.Y. 2011), aff'd sub nom., Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch.

In that regard, with respect to the specific administrative procedures employed in North Carolina, exhaustion includes a decision by an ALJ at the first tier and a review of such decision at the second tier by an SRO appointed by the State Board. Only "[a]fter the state level appeals process is exhausted . . . [can] an aggrieved party . . . seek further review by bringing an action in a federal district court." Cone, 657 F. Supp. 2d at 670. For example, in Justice v. Granville County Board of Education, 5:10-CV-350-BR, 2010 WL 4668791 (E.D.N.C. Sept. 2, 2010), the court dismissed a plaintiff's complaint that "contain[ed] no allegation that [the plaintiff] had received an unfavorable SRO decision." Id. at *2, report and recommendation adopted, 5:10-CV-00350-BR, 2010 WL 4668774 (E.D.N.C. Oct. 19, 2010). In doing so, the court noted that its "jurisdiction under the IDEA is limited to review of the final 'findings and decision' of the administrative proceeding," and where such administrative remedies have not been exhausted, "parties cannot maintain an action in federal court." Id. Accordingly, the Court finds that because Plaintiffs did not seek review of the ALJ's decision by an SRO before filing this civil action, Plaintiffs have not exhausted their administrative remedies in S.F. II. As such, the Court is without subject matter jurisdiction over Plaintiffs' S.F. II claims.[14] In that regard, the Court

---

Dist., 496 F. App'x 131 (2d Cir. 2012) (noting that the distinction between jurisdictional and claim-processing rules need not be determined because the defendants "[had] in fact asserted the exhaustion requirement as an affirmative defense, and the IDEA makes clear that exhaustion of administrative remedies is an absolute prerequisite to bringing suit under any federal statute for relief available under the IDEA").

[14]The Court notes that Defendant Board also makes an argument that Plaintiffs' claims arising from S.F. II should be dismissed pursuant to Rule 12(b)(6) based on an allegation that such claims are time-barred. Because the Court will dismiss Plaintiffs' S.F. II claims based on a failure to exhaust administrative remedies, the Court need not address Defendant Board's arguments regarding the timeliness of filing relating to S.F. II.

will grant Defendant Board's Motion to Dismiss [Doc. #14] Plaintiffs' S.F. II claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and Plaintiffs' S.F. II claims will be dismissed without prejudice to Plaintiffs re-filing such claims after exhausting the applicable state administrative remedies.

## IV.    CONCLUSION

Based on the foregoing, IT IS ORDERED that Defendant Board's Motion to Dismiss Plaintiffs' Amended Complaint [Doc. #19] and Defendant Kentfield's Motion to Dismiss Plaintiffs' Amended Complaint [Doc. #30] are GRANTED, and Plaintiffs' Amended Complaint [Doc. #18] is hereby DISMISSED pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with Federal Rule of Civil Procedure 15(a).

IT IS FURTHER ORDERED that pursuant to the Court's dismissal of Plaintiffs' Amended Complaint, Defendant Board's Motion to Strike [Doc. #28] is DENIED as MOOT, as it seeks to strike Plaintiffs' Response to Defendant Board's Motion to Dismiss the Amended Complaint.

IT IS FURTHER ORDERED that Defendant Board's Motion to Dismiss [Doc. #14] Plaintiffs' S.F. I claim is GRANTED pursuant to Federal Rule of Civil Procedure 12(b)(6), and Plaintiffs' S.F. I claim is DISMISSED as time-barred.

IT IS FURTHER ORDERED that Defendant Board's Motion to Dismiss [Doc. #14] Plaintiffs' S.F. II claims is GRANTED pursuant to Federal Rule of Civil Procedure 12(b)(1), and Plaintiffs' S.F. II claims are DISMISSED WITHOUT PREJUDICE to Plaintiffs re-filing such claims after exhausting the applicable state administrative remedies.

IT IS FINALLY ORDERED that Plaintiffs' Motion for Appointment of Guardian Ad Litem [Doc. #32] is DENIED as MOOT, as there are no remaining claims in the action.

A Judgment consistent with this Memorandum Opinion and Order will be filed contemporaneously herewith.

This, the 28th day of August, 2013.

United States District Judge